RAMON M. ESTEVEZ et al., Appellants, *v.* EMILY E. PURDY et al., Respondents.

Where a lender has received a security providing for the payment of the precise amount loaned by him with lawful interest, the fact that his agent, without his authority, knowledge or participation, has extorted from the borrower a sum of money upon the false pretense that a portion thereof was a bonus for his principal does not taint the security with usury.

The employment of an agent to effect a loan does not impliedly or apparently authorize him to violate law or do an illegal act.

The fact that an action upon the security is commenced by the principal after knowledge upon his part of the exaction of the agent is not a ratification thereof; the security coming to him unaffected by usury, he has the right to enforce it.

After payment of a portion of the amount due upon a bond secured by mortgage, the obligors applied to the agent of the obligees for a reloan of the sum paid upon the same securities. This the obligees agreed to. The agent exacted of the obligors $225 professedly for the obligees, who did not receive any portion of it and knew nothing of the representation. One of the obligees was informed by the obligors before the loan of the terms their agent exacted, to which he replied that it was too much for the agent's services. The obligees loaned the full amount, and it did not appear that they knew how much was finally paid or agreed to be paid to the agent. *Held*, that the evidence rebutted any inference that the obligees connived at, consented to, or authorized the charge, and that, therefore, there was no usury.

*Algur* v. *Gardner* (54 N. Y., 360) distinguished.
*Estevez* v. *Purdy* (6 Hun, 46) reversed.

(Argued June 12, 1876; decided June 20, 1876.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department reversing a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term. (Reported below, 6 Hun, 46.)

This action was brought for the foreclosure of a bond and mortgage for the sum of $5,000, executed by defendants, Emily E. and Ambrose H. Purdy, to plaintiffs.

The court found, in substance, that Mrs. Purdy made application to a Mr. Butcher, an agent of plaintiffs, for the loan, who exacted and retained out of the $5,000 loaned the sum of $500, he representing that $150 was for his services in search-

ing the title, etc., and the balance was to go to plaintiffs as a bonus; that when the bond became due $2,500 of principal and all interest accrued were paid thereon, and payment of the remaining $2,500 of principal was extended for three months upon payment by Mrs. Purdy of sixty-two dollars and fifty cents, which was demanded by Mr. Butcher and paid by Mrs. Purdy as a bonus for such extension; that at or about the expiration of said period of three months an arrangement was made with Mrs. Purdy, by which the plaintiffs loaned her $2,500 more, and it was agreed between them and her that the $5,000 in which she was then so indebted to them should become payable in nine months from that time and not before. Mrs. Purdy at that time also verbally agreed with the plaintiffs that upon such additional loan said bond and mortgage should stand as originally for $5,000 and interest, and upon receipt of said last $2,500 made and delivered to the plaintiffs a certificate in writing, signed by her, to the effect that $5,000 was unpaid on the bond; that at the time of the said last loan and extension Mr. Butcher exacted and received from Mrs. Purdy $225 as a condition thereof and bonus therefor, which, he stated to the agent of Mrs. Purdy, was all to go to the plaintiffs for their exclusive benefit, and he afterwards told said agent that he had paid all of it to them; that plaintiffs were aware that their agent exacted such sum as a condition of the reloan, and that defendants agreed to pay it; that before the commencement of this action the plaintiffs had notice and were aware of the fact that Mrs. Purdy asserted the defence of usury set up by her in this action by reason of the aforesaid payments of bonus, and knew of the claim made by Mr. Butcher for the last sum before it was paid; that none of the money so paid for bonus was ever received by the plaintiffs themselves or was applied to their benefit, and that they never authorized Mr. Butcher to take or agree for more than seven per cent interest per annum for the loan, or forbearance of said money, or of any of it. As conclusions of law, that the plaintiffs were entitled to judgment of foreclosure and sale for the amount of the bond and mortgage, with interest.

Plaintiffs, in their evidence on the trial, denied all knowledge of their agent having charged a bonus, and one of them testified that when informed, prior to the second loan, of the exaction of their agent, and the amount thereof, he stated that it was too much for the agent to charge for his services. No evidence was given showing that plaintiffs knew the amount finally paid or agreed to be paid.

*Samuel Hand* for the appellants. Where an agent for loaning money takes a bonus beyond legal interest for himself without the knowledge, authority or consent of his principal, it does not affect with usury the loan of the principal. (*Condit* v. *Baldwin*, 21 N. Y., 219 ; *Bell* v. *Day*, 32 id., 165 ; *Farmers' Co.* v. *Clowes*, 3 id., 470 ; *Chatham Bk.* v. *Betts*, 37 id., 356 ; 9 Bosw., 552 ; *Crane* v. *Hubbell*, 7 Paige, 413 ; *Elmer* v. *Oakley*, 3 Lans., 34.)

*Moses Ely* for the respondents. The bonus paid to plaintiff's agent rendered the loan usurious. (*Bell* v. *Day*, 32 N. Y., 179 ; *Bennett* v. *Judson*, 21 id., 238 ; *Condit* v. *Baldwin*, 21 Barb., 187.)

Earl, J. The question to be determined by us is whether the plaintiffs' securities, which provide for the payment to them of the precise amount loaned by them, with lawful interest, are tainted with usury and void because their agent, in making the loan, without their knowledge or consent, extorted from the defendants the sum of $500, upon the false pretense that a portion thereof was for his services and the balance was a bonus for his principals. This question must, upon authority, be determined in favor of the plaintiffs.

In *Condit* v. *Baldwin* (21 N. Y., 219) the plaintiff placed in the hands of Williams the sum of $400 to invest for her at lawful interest ; he loaned it to the defendants upon their note for the amount with lawful interest and exacted for himself a bonus of twenty-five dollars from the borrowers, and it was held that the note was not affected with usury. The

law of the case, as stated in the head-note, is, that where an agent intrusted with money to invest at legal interest exacted a bonus for himself as the condition of making a loan, without the knowledge or consent of his principal, this does not constitute usury in the principal nor affect the security in his hands. That case was decided by a divided court, but it was followed on the principle of *stare decisis* in *Bell* v. *Day* (32 N. Y., 165). In the latter case, Glover was the general agent of the lender, and exacted for himself a bonus of fifty dollars, without the knowledge or authority of the lender, and it was held that the contract of loan was not by the extortion of the agent rendered usurious. These decisions are based upon the principle that the lender did not, either expressly, impliedly or apparently, authorize the agent to do an illegal act or to violate the law; and hence, that he was not affected by the wrongful act of the agent in extorting from the borrower a bonus for himself, so long as the lender did not authorize, consent to or participate in the extortion and was seeking to enforce a security for the precise amount loaned, with lawful interest. In each case there was but one agreement, to pay the amount borrowed to the lender, with lawful interest, and to pay the bonus to the agent.

It is sought to distinguish this case from those because here the agent professed to take a bonus for the lenders. It must be conceded that if he had professed to take the bonus for himself this case would have been precisely like those. But it can make no difference in principle that he professed to take it for the lenders, so long as he had no express, implied, or apparent authority to do so. The lenders have neither taken, assented to, nor participated in the usury. In *Lee* v. *Chadsey* (3 Abb. Ct. of Ap. Dec., 43), Boyer loaned money to Chadsey and charged certain commissions for making the loan. He loaned the money ostensibly for himself, but really for Leeds, and it was held that a commission, in excess of lawful interest, exacted by an agent for his own benefit, without the knowledge of his principal, does not, necessarily make the loan usurious, even though the borrower believed the agent was

dealing with him as principal. J. C. Smith, J., said : "There is nothing in the case to estop Leeds from questioning the truth of the representations made by Boyer to Chadsey, and, upon the authority of the decisions of this court in *Condit* v. *Baldwin* and *Bell* v. *Day*, it must be held, that although Chadsey believed he was dealing with Boyer, and paid him a bonus in excess of the legal rate of interest as a condition of the loan, yet, if in fact Leeds loaned the money to Chadsey the note was not usurious if Leeds did not take usurious interest himself or know of its being taken." That case settles the point that the principle of the two former cases is not confined to the case where the agent of the lender professedly exacts the bonus for himself.

It is further claimed that this case is distinguishable from the cases cited because, here, the plaintiffs knew before they commenced this action, of the exactions by their agent, and hence that they ratified, by commencing this action, the acts of their agent, who professed to act for them in extorting the bonus. But the cases are not distinguishable in this. They parted with their money and took security for the precise amount loaned, with lawful interest, without any knowledge of the bonus, and their security comes to them untainted by usury, according to the cases above cited. Hence they had the right to enforce them, and their attempt to do so, certainly, could not render them void because of their subsequent knowledge of the bonus exacted.

At the end of a year from the making the loan, the defendants paid thereon the sum of $2,500. A short time thereafter the defendants applied, through Butcher, to have the $2,500 reloaned to them upon the same security, and it was agreed between them and the plaintiffs that the money should be thus reloaned and that the plaintiffs should then hold the mortgage again as a security for the full $5,000. Upon this reloan Butcher exacted $225, professedly for the plaintiffs ; but it was really for himself, and the plaintiffs did not share in it or know any thing about it. If there was nothing more, this exaction would be covered by what has already been said

But it is claimed that the plaintiffs knew of this exaction before they parted with the money, and the defendants gave evidence tending to show that they did know of it, and the judge found that they did. As the judge decided the case in favor of the plaintiffs, we may assume that he took the version as to their knowledge testified to by them and most favorable to them; and they denied all knowledge, except one of them testified, that when informed of the exaction, he stated that it was too much for the services of Butcher. From their evidence it appears that they did not know that Butcher charged a bonus, either for them or himself, but simply that he charged a sum for his services which they considered too much. It does not appear that they knew before they reloaned the money how much was finally paid or agreed to be paid to Butcher. All inference that they connived at, consented to, or authorized the charge in any way was rebutted by the evidence, and hence there was no usury affecting the plaintiffs in the transaction.

The case of *Algur* v. *Gardner* (54 N. Y., 360) is not in conflict with the authorities above cited. In that case there was evidence from which the jury might have inferred that the loan was made by the agent, at a usurious rate of interest, with the consent of the principal, and the judgment was reversed for an erroneous charge of the judge affecting the main issue in the case.

It is not important to consider whether the construction of the usury laws of this State, given in the cases above cited is the wisest or soundest, or whether there is not much that can be said against it. It has been followed in many cases, and has, doubtless, furnished a rule of action in many transactions between lenders and borrowers, and these authorities must be respected upon the principle of *stare decisis*.

The order of the General Term must be reversed and the judgment of the Special Term affirmed, with costs.

All concur except CHURCH, Ch. J., not voting; ANDREWS, J., absent.

Order reversed, and judgment accordingly.