Lyon v. Simpson.

wife.    This case is therefore not within the decision of Church v. Landers (10 *Wend.* 79).

The defendants knew that Mead was taking the goods in disregard of any claim that the plaintiff might have had upon them, and they assisted him in taking them.

# Common Pleas.

### General Term.

## MARY E. LYON, APPELLANT, *against* ROBERT SIMPSON AND OTHERS, RESPONDENTS.

The exaction of an unlawful rate of interest by a servant without the knowledge of his employer in the loan of money does not affect the same or the security taken for its repayment upon the charge of usury.

The plea of usury must be distinctly and correctly set forth in the complaint, and proved as alleged, or the plaintiff must fail in the action.

An allegation in the complaint of a corrupt and usurious payment made subsequently to the loan of money in consideration of the extension of time of its payment does not affect the validity of said loan or the security for the same.

The complaint in this action alleges that the defendants, Robert Simpson and Wilson Simpson were copartners in business as pawnbrokers, in the City of New York ; that on the 11th of April, 1878, the said firm received certain personal property belonging to the plaintiff as security for a usurious loan made by the firm to the plaintiff of the sum of two hundred and fifty dollars for twelve months, with interest, at the rate of twenty-five per cent. per annum ; that at the end of the twelve months the firm agreed to extend the loan to

the 5th of August, 1879, and upon demand of the firm and as a condition of such extension, the plaintiff paid as interest upon said loan up to said 5th of August, 1879, the sum of eighty-four dollars, or at the rate of twenty-five per cent. per annum, and the said firm thereupon agreed to and did extend the loan for twelve months from the 5th of August, 1879, on interest, at the rate of twenty-five per cent. per annum, and that said personal property was converted by the defendants, contrary to the provision of the statute regulating the interest of money, to the plaintiff's damage, and so forth.

The answer admits copartnership of the defendants; admits that certain property was pawned with the firm upon a loan made thereon for the sum of $250, but denies all the allegations in regard to any usurious agreement.

Upon the trial of the cause before Mr. Justice Mc-Adam the only evidence offered to support any usurious agreement at the time of the making of the loan was the evidence of the plaintiff, who testified that some person in the store of the defendants had told the plaintiff that they were making small loans on diamonds, and that she must be willing to pay three per cent. per month, and that she told him that she was willing to pay three per cent. per month, and that the tickets were made out at three per cent. per month, and the witness further testified that she paid subsequently the sum of $80 in 1879 at the time of the agreement to extend the loan to a clerk of the defendants.

There is no evidence in the case going to show any authority upon the part of any of the employees of the defendants to make a charge for interest greater than that allowed by statute, or that any portion of the money paid for interest was ever received by the defendants.

The judge, at the trial term, dismissed the com-

plaint, and from the judgment thereupon entered an appeal was taken to the general term of the marine court, and such judgment was thereupon affirmed ; and from the judgment of affirmance an appeal was taken to this court.

*Henry Parsons*, for appellant.

*Abram Kling*, for respondent.

Van Brunt, J.—We concur with the views expressed in the opinion of the learned justice in the court below, given at the time of the dismissal of the complaint.

The cases of Condit *v.* Baldwin (21 *N. Y.* 219) ; Bell *v.* Day (32 *N. Y.* 165) ; Estevy *v.* Purdy (66 *N. Y.* 446), all support the proposition that the taking of unlawful interest by a servant without the knowledge of his employer, and in which there is no evidence that the employer has participated, does not invalidate the claim of the employer for a repayment of the loan.

The theory upon which these cases proceed is that the servant is authorized to do a lawful act, and if he does an unlawful act without the knowledge or assent of his master, he cannot affect the master's rights.

In the case of Pratt *v.* Elkins (80 *N. Y.* 198) there was express evidence that the clerks in that case had on previous occasions, by and with the direction of the plaintiff, made usurious loans, which fact the court held justified an inference that the loan in question in that case was made by and with the consent of the master. In the case of Wyeth *v.* Braniff (84 *N. Y.* 627), the court found that the loan in question was usurious in its inception, and that the actual payment of the usury was part and parcel of the contract of loan, and that the usurious sum was at the time of the making of the agreement actually paid.

In the case at bar there is no proof whatever to support any claim, that defendants' clerks had ever upon any previous occasion been authorized to exact usury upon any loans made by them; nor is there any evidence that the defendants knew of any usurious transaction made on their behalf by any one of the clerks. Under these circumstances, it seems that it would be a hard rule of law to hold, that where a servant makes an unauthorized usurious agreement without the knowledge of his master, and upon which no money is paid, that the master should lose the whole of the amount loaned because of the unauthorized act of his servant. But in the case at bar there is no proof in the evidence of any usurious agreement such as is claimed to be set forth in the first paragraph of the complaint. The allegation is that on the 11th of April, 1878, the property in question was given as security for a usurious loan made by the defendants to the plaintiff for twelve months on interest at the rate of twenty-five per cent. per annum. The proof shows, if it shows any usurious agreement, that the rate was to be three per cent. per month, or thirty-six per cent. per annum, a very material variance from the attempted allegation of usury made in the complaint.

The proof in regard to the usury exacted in the following year cannot affect the right of the defendants to hold the property as security for the loan already made.

It seems to be necessary, in order that the parties should have the benefit of the statute, that the loan must be proved to be usurious at the time of its inception, and that usury taken subsequently for an extension of the loan cannot invalidate the original security (Trust Co. v. Keech, 69 N. Y. 248); and it may be well claimed that the allegation in the second paragraph of the complaint contained no sufficient averment of the corrupt and usurious agreement made at the inception

Lyon v. Simpson.

of the contract in April, 1878. The paragraph in question contains no allegation of any agreement upon the part of the plaintiff to pay any usurious interest, or any allegation that the defendants exacted either interest at usurious rate or an agreement from the plaintiff to pay interest at a usurious rate as a consideration for the forbearance of the loan (National Bank of Auburn v. Lewis, 10 *Hun*, 468, and cases there cited), or that any corrupt agreement was entered into, allegations essential to a valid plea setting up the defense of usury.

We are of the opinion, therefore, that the judgment should be affirmed, with costs.

C. P. DALY, Ch. J., and BEACH, J., concur.

### Motion for a new trial on the minutes.

McADAM, J.—There is no evidence in the case, showing that the usurious transactions complained of were had with the defendant personally, nor is there any evidence which would justify me in assuming, or the jury in finding, that such usurious agreement was sanctioned by the defendant. The law will presume, in the absence of evidence to the contrary, that defendant was carrying on a lawful business in a lawful way, and that he employed his clerks to conduct the same in a legal manner. The present action is highly penal, and there is no evidence showing that the defendant had knowledge of or ratified the unlawful acts of his agents (Condit v. Baldwin, 21 *N. Y.* 219; Bell v. Day, 32 *Id.* 165; Estevey v. Purdy, 66 *Id.* 446). As was suggested in *Condit v. Baldwin, supra* (at p. 222): "If a master command his servant to do what is lawful, and he do an unlawful act, the master shall not answer, but the servant for his own misbehavior; otherwise it would be in the power of every servant to subject his master to·what actions or penalties he pleased." If the plaintiff had made a personal demand upon the defendant for a return of her property, and he had in any way admitted, asserted or claimed the benefit of the unlawful acts of his servants, he might have been concluded by them. He has done nothing to concede his liability. The motion for a new trial must be denied.